IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-89-FL

| | |
|---|---|
| REBECCA GREENE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM &<br>RECOMMENDATION** |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-23 & 28). Plaintiff has filed a response (DE-30), and the time for filing any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-23) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-28) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 4, 2007 alleging that she became unable to work on June 6, 2007. (Tr. 13). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"),

1

who determined that Plaintiff was not disabled during the relevant time period in a decision dated November 19, 2009. *Id.* at 13-19. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on March 15, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-6. Plaintiff filed the instant action on May 9, 2011. (DE-1).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

2

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) atrial fibrillation; and 2) epilepsy. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* at 16. Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a range of medium of work. *Id.*

3

The ALJ then determined that Plaintiff was unable to perform any past relevant work. *Id.* at 18. However, by relying upon the Medical-Vocational Guidelines ("Grids"), 20 CFR Part 404, Subpart P, Appendix 2, the ALJ concluded that there were a significant number of jobs in the national economy that Plaintiff could perform. *Id*. at 18-19. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 19. These determinations were supported by substantial evidence, a summary of which now follows.

Plaintiff was examined on March 6, 2007. *Id.* at 354. Although it was noted that Plaintiff had a history of carpal tunnel syndrome, it was also noted that this condition had "definitely improved." *Id.* Specifically, her carpal tunnel syndrome was "[o]nly bothersome at night." *Id.* She was not taking any anti-inflammatories for her carpal tunnel syndrome, and she had no decrease in her grip strength. *Id.*

On June 7, 2007, Plaintiff was admitted to the hospital after she "was found unconscious in a somewhat rigid posture on the kitchen floor." *Id.* at 156. It was noted that Plaintiff had a long history of fainting spells but no history of seizures. *Id.* Neurological exam showed normal cranial nerves. *Id.* While she was transported to the hospital, Plaintiff's heart rhythm was in atrial fibrillation, however during her stay it converted to normal sinus rhythm. *Id.* at 156-157. Her hospital stay was described as "uneventful" and she was discharged in stable condition. *Id.* at 157. She felt well and was able to ambulate. *Id.*

Dr. Samuel Koszer stated on June 22, 2007 that Plaintiff had "been diagnosed with Epilepsy and should not continue to drive [a s]chool bus as a profession." *Id.* at 376.

Plaintiff was examined on June 27, 2007. *Id.* at 353. Her atrial fibrillation was described as "improved." *Id.*

Dr. Koszer examined Plaintiff on July 3, 2007. *Id.* at 190-191. Plaintiff had no: 1)

4

headache; 2) tingling or numbness; 3) dizziness; or 4) neck pain. *Id.* at 190. She had full motor strength throughout, and her gait was "within normal limits". *Id.*

On August 30, 2007, Plaintiff was examined by Dr. C. Daniel Hall. *Id.* at 309. Plaintiff's muscle strength was normal throughout, and her gait was also normal. *Id.* at 310. A CT scan of Plaintiff's brain was negative, and an X-ray of Plaintiff's chest identified no acute or active chest disease. *Id.* at 315-316.

Plaintiff was examined on September 6, 2007. *Id.* at 230. She had full strength throughout. *Id.* It was noted that Plaintiff had "no previous medical history until starting to have problems in June 2007 with syncopal episodes." *Id.* Dr. Christopher Ellis stated he was unsure whether atrial fibrillation was "causing her syncopal episodes or if she is, in fact, having seizures." *Id.* He also noted that Coumadin and Toprol improved Plaintiff's symptoms. *Id.*

On October 16, 2007, Plaintiff was examined by Mr. Henry F. Tonn, M.S. *Id.* at 246. Plaintiff stated that she was able to do "a little house work." *Id.* Dr. Tonn noted the following:

> The claimant's affect was relatively normal, however, and her emotional expression was appropriate to the thought content and situation. Her thought processes were coherent and she did not have loose associations or distractibility. Her thought content was normal and she did not have delusions, ideas of reference, or disturbances in concept formation. She denies suicidal ideation or hallucinations.
>
> *Id.*

Ultimately, Mr. Tonn indicated that Plaintiff was "able to perform simple, routine, and repetitive tasks and interact with peers and coworkers and respond appropriately to supervision and maintain concentration and persistence at a task." *Id.* at 248. He also opined that Plaintiff was capable of managing any awarded benefits. *Id.*

Plaintiff was examined by Dr. Ellis on October 22, 2007. *Id.* at 351. He noted that

5

Plaintiff had "done very well in the interim without anymore episodes of palpitations or syncope." *Id.* Furthermore, Dr. Ellis stated that "[i]t does not sound like . . . [Plaintiff] really has a seizure disorder either." *Id.*

Dr. Robert Pyle assessed Plaintiff's physical RFC on November 14, 2007. *Id.* at 249-256. It was determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk for a total of about six hours in an eight hour workday; 4) sit for a total of about six hours in an eight hour workday; and 5) push and/or pull with no limitations other than those already noted for lifting and carrying. *Id.* at 250. Plaintiff could only occasionally climb or balance. *Id.* at 251. She could frequently stoop, kneel, crouch, and crawl. *Id.* No manipulative, visual, or communicative limitations were noted. *Id.* at 252. Other than avoiding hazards such as machinery or heights, no environmental limitations were noted. *Id.* at 253.

Plaintiff's mental RFC was assessed by Dr. Brett A. Fox on November 14, 2007. *Id.* at 257-274. Dr. Fox opined that Plaintiff's impairments did not precisely satisfy the diagnostic criteria of any listing. *Id.* at 260. It was determined that Plaintiff had only mild limitations in her activities of daily living and maintaining social functioning. *Id.* at 267. She was not significantly limited in 17 of 20 rated categories, and only moderately limited in the other three. *Id.* at 271-272. Ultimately, Dr. Fox noted that Plaintiff should be able to: 1) understand, retain and follow simple instructions; 2) maintain sufficient attention and concentration as required for the completion of simple work related tasks; 3) accept direction from a supervisor as well as interact appropriately with co-workers; 4) adapt to changes; and 5) complete routine work related tasks. *Id.* at 273.

On January 17, 2008, Plaintiff's physical RFC was assessed again. *Id.* at 278-285. It was

6

Case 7:11-cv-00089-FL   Document 31   Filed 03/06/12   Page 6 of 15

determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk for a total of about six hours in an eight hour workday; 4) sit for a total of about six hours in an eight hour workday; and 5) push and/or pull with no limitations other than those already noted for lifting and carrying. *Id.* at 279-280. No postural, manipulative, visual, or communicative limitations were noted. *Id.* at 280-282. Other than avoiding hazards such as machinery or heights, no environmental limitations were noted. *Id.* at 282.

Dr. Rudy Warren assessed Plaintiff's mental RFC on January 19, 2008. *Id.* at 329-346. It was determined that Plaintiff's impairments did not precisely satisfy the diagnostic criteria of any listing. *Id.* at 332. Plaintiff had only mild limitations in her activities of daily living and maintaining social functioning. *Id.* at 339. She was not significantly limited in 15 of 20 rated categories, and only moderately limited in the other five. *Id.* at 343-344. Ultimately, Dr. Fox noted that Plaintiff was able to: 1) understand and remember simple instructions; 2) perform simple instructions; and 3) adapt to changes in the work place *Id.* at 345. Finally, Dr. Warren opined that Plaintiff may "do better in a job not requiring a lot of public contact." *Id.*

On February 19, 2008, Dr. Hall examined Plaintiff. *Id*. at 407. She had experienced no seizures since her last visit, and that condition was described as "doing well." *Id*. at 407-408. Plaintiff had intermittent numbness and tingling in the right hand and forearm "which gets painful at times and awakens her from sleep, with lesser numbness and tingling in the left hand" *Id*. Her muscle strength, coordination and gait were all generally normal. *Id*.

Plaintiff was examined by Dr. Ellis on April 24, 2008. *Id.* at 350. Dr. Ellis stated that Plaintiff had "done well in the interim." *Id.* He also observed that Plaintiff was "tolerating her medications well." *Id.*

7

Dr. Hall examined Plaintiff on December 17, 2008.  *Id.* at 391.  Plaintiff complained of numbness and tingling in her right hand, although she denied pain or weakness.  *Id.*  Her strength, coordination and gait were all normal.  *Id.*  Nerve conduction studies revealed:  1) mild to moderate right median neuropathy at the wrist (as seen in carpal tunnel syndrome); 2) mild left median neuropathy at the wrist (as seen in carpal tunnel syndrome); 3) minimal left ulnar neuropathy at the elbow manifest solely as mild slowing of motor conduction velocity across the elbow with otherwise normal motor and sensory responses; and 4) normal left ulnar sensory response.  *Id*. at 394.

Plaintiff was examined by Dr. Richard Leighton on January 12, 2009.  *Id*. at 413.  She complained of pain and difficulty in her right hand, as well as numbness and tingling.  *Id*.  Despite these symptoms, Plaintiff had "good strength."  *Id*.  She was diagnosed with carpal tunnel syndrome.  *Id*. at 414.

On February 10, 2009, Plaintiff underwent a right carpal tunnel release .  *Id.* at 379.  It was noted that Plaintiff had "persistent pain and difficulty with the right hand secondary to carpal tunnel syndrome", and that conservative therapy had failed  *Id.*  There were no complications during this procedure.  *Id.*  Plaintiff's right hand tingling was completely resolved on February 20, 2009.  *Id*. at 412.  During a March 9, 2009 follow up for her carpal tunnel release, Plaintiff was "doing well", and her symptoms were described as "insignificant."  *Id*. at 411

Dr. Ellis examined Plaintiff on May 7, 2009.  *Id.* at 415.  Plaintiff was not anxious or depressed and had no difficulty concentrating.  *Id.*  In addition, Plaintiff had no arthralgias, limb pain or myalgias.  *Id.*  She had normal tone and muscle strength.  *Id.*

On August 14, 2009, Dr. Christopher Isenhour stated that Plaintiff's "conditions are under good control."  *Id.* at 445.  He was not specifically aware of any limitations Plaintiff had

8

regarding her carpal tunnel syndrome. *Id.*

Plaintiff testified that she is "exhaust[ed] half the time" and that she does not "have the strength to do things with [her] hands anymore." *Id.* at 28-29. However, she also testified that after surgery her right hand is "much, much better" and that she only had difficulty with her right hand after "doing something for a long period of time." *Id.* at 30-31. In addition, Plaintiff testified that she could perform household chores for "couple of hours" before needing to take a 15 minute break. *Id.* at 32. She also stated that she was not limited in how long she could stand, although she later clarified that she did not think she could stand for six hours during an eight hour day. *Id.* at 33. Plaintiff estimated that she could lift and carry 20 pounds. *Id.*

Based on this record, the ALJ made the following specific findings in addition to those previously noted:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c). The claimant can lift and carry 50 pounds occasionally and 25 pounds frequently. She can sit for two hours, and stand/walk for six hours in an eight hour day. The claimant should avoid hazards and moving machinery . . .
>
> The longitudinal medical evidence of record does not fully support the claimant's allegation of disability . . .
>
> In a letter dated August 14, 2009, Dr. Christopher Isenhour indicated the claimant was under his care since July 2007 for seizure disorder, atrial fibrillation, hyperlipidemia, carpal tunnel syndrome, and anxiety. Her conditions were under good control, and she was seizure-free since August 2007. She had no recent syncopal episodes. The claimant's subjective complaints of fatigue were plausible based on her medications (Exhibit 27F) . . .
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual

9

> functional capacity assessment.
>
> The testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of her limitations. Neither the severity nor the extent is supported by the objective medical evidence of record. The claimant testified to naps almost daily, but the claimant did not report this level of fatigue to her treating physicians. She admitted the ability to perform a wide range of daily activities including chores and visiting with family and friends (Exhibits 2E, 3E, 8F). The claimant admitted that her last seizure was in August 2007. Treatment notes from Dr. Ellis also showed her atrial afibrillation was asymptomatic and she discontinued Coumadin (Exhibit 24F). Dr. Isenhour reported that the claimant's conditions were under good control with medication, and did not indicate that the claimant was disabled (Exhibit 27F) . . .
>
> In sum, the above residual functional capacity assessment is supported by findings that the claimant's conditions are controlled with medications (Exhibit 27F). It is supported by the claimant's wide range of activities of daily living (Exhibits 8F, 2E, 3E). The claimant is unable to work near hazards or with moving machinery due to her history of seizures . . .
> If the claimant had the residual functional capacity to perform the full range of medium work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15. The additional limitations regarding the need to avoid work at heights or around moving machinery have little or no effect on the occupational base of unskilled medium work. Social Security Ruling 85-15. A finding of "not disabled" is therefore appropriate under this rule.
>
> *Id.* at 16-19.

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of

10

this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit. The undersigned will nonetheless address Plaintiff's specific assignment of error.

**The ALJ proper assessed the medical record**

Plaintiff argues that the ALJ improperly assessed: 1) evidence relating to Plaintiff's carpal tunnel syndrome; 2) Dr. Isenhour's opinion; and 3) Mr. Tonn's opinion. (DE-24. pg. 12).

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. Wireman v. Barnhart, 2006 WL 2565245, * 8 (W.D.Va. September 5, 2006)(internal citations omitted). Furthermore, "while an ALJ may not reject medical evidence for no reason or the wrong reason . . .an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings." Id. (internal citations omitted). While "the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro, 270 F.3d at 178. Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In sum, "an ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ

11

has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion." Koonce v. Apfel, 166 F.3d 1209, * 2 (4th Cir. 1999) (unpublished opinion)(internal citations omitted).

Here, Plaintiff's carpal tunnel symptoms were ultimately deemed "insignificant." (Tr. 411). Dr. Isenhour specifically noted that Plaintiff's symptoms were "under good control." *Id*. at 445. Mr. Tonn indicated that Plaintiff was "able to perform simple, routine, and repetitive tasks and interact with peers and coworkers and respond appropriately to supervision and maintain concentration and persistence at a task." *Id.* at 248. No specific limitations were noted by Mr. Tonn. *Id.*

In his decision, the ALJ thoroughly reviewed the record and fully explained his reasoning in weighing the medical evidence. These reasons were supported by substantial evidence and, therefore, this assignment of error is without merit.

**<u>The ALJ properly assessed Plaintiff's credibility</u>**

Plaintiff contends that the ALJ incorrectly assessed her credibility. The ALJ's findings with regard to Plaintiff's subjective complaints have already been summarized. "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

Furthermore, the regulations provide a two-step process for evaluating a claimant's subjective complaints of pain or other symptoms. 20 C.F.R. § 404.1529; Craig , 76 F.3d at 593-596. First, the ALJ must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or alleged symptoms. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594. Second, the ALJ evaluates the intensity

12

and persistence of the symptoms to determine how they limit the capacity for work. 20 C.F.R. 404.1529(c); Craig, 76 F.3d at 595. The ALJ evaluates the intensity and persistence of the symptoms and the extent to which they limit a claimant's capacity for work in light of all the available evidence, including the objective medical evidence. 20 C.F.R. 404.1529(c). At the second step, however, claims of disabling symptoms may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of the symptoms. *See* Craig, 76 F.3d at 595. Since symptoms can sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, all other information about symptoms, including statements of the claimant, must be carefully considered in the second part of the evaluation. 20 C.F.R. 404.1529(c)(2). The extent to which a claimant's statements about symptoms can be relied upon as probative evidence in determining whether the claimant is disabled depends on the credibility of the statements. SSR 96-7p, 1996 WL 374186, *4.

Here, the ALJ followed these standards in assessing Plaintiff's credibility. The ALJ's findings of fact demonstrate that the ALJ gave proper weight to all of Plaintiff's limitations and impairments in assessing Plaintiff's credibility. Likewise, the ALJ's citations to Plaintiff's medical records constitute substantial evidence which support that assessment. Accordingly, this assignment of error is without merit.

**The ALJ did not err by using the Medical-Vocational Guidelines**

Plaintiff also alleges that the ALJ erred by not obtaining the testimony of a vocational expert. In the instant matter, the ALJ used the Grids to determine that there were jobs in the national economy which Plaintiff could perform. If a claimant has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level, the

13

Commissioner may rely solely on the Grids to satisfy his burden of proof. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). However, the Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. Aistrop v. Barnhart, 36 Fed. Appx. 145, 146 (4th Cir. 2002)(unpublished opinion). To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the Grids may not be relied upon to demonstrate the availability of alternate work activities. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). Rather, when a claimant suffers from both exertional and nonexertional limitations, the Grids are not conclusive but may only serve as a guide. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)(*citing* Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). A nonexertional limitation is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not . . . [s]uch limitations are present at all times in a claimant's life, whether during exertion or rest." Woody v. Barnhart, 326 F. Supp.2d 744, 752 (W.D.Va. 2004)(*quoting* Gory 712 F.2d at 930)). Typically, they are conditions such as mental disorders, environmental intolerances, substance addictions, or sensory impediments. *Id.* (*citing* 20 C.F.R. § 1569a, SSR 96-8p; and Walker, 889 F.2d at 48-49 (4th Cir. 1989)). Furthermore "[a] non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category." Aistrop, 36 Fed. Appx. at 147(*citing* Gory, 712 F.2d at 930). However, not every nonexertional limitation or malady rises to the level of nonexertional impairment, so as to preclude reliance on the Grids. Walker, 889 F.2d at 49 (*citing* Grant, 699 F.2d at 189). The proper inquiry is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable. *Id.*

14

Finally, even if nonexertional limitations are present, if the individual's nonexertional limitations do not significantly erode the occupational base, the ALJ may rely on the Medical–Vocational Rules as a framework to support a finding of non-disability without consulting a vocational expert. *See*, SSR 83–14, 1983 WL 31254 (1983). *See also*, Yarbrough v. Astrue, 2012 WL 369428 (N.D.W.Va. February 3, 2012).

This assignment of error predominantly relies upon limitations that Plaintiff alleges the ALJ failed to include when assessing her RFC. The undersigned has already determined that the ALJ's findings were supported by substantial evidence. Here, the ALJ found that the Plaintiff had the RFC to perform a range of medium work. (Tr. 19). He also found that the additional limitations regarding the need to avoid work at heights or around moving machinery have little or no effect on the occupational base of unskilled medium work. *Id.* Because these findings were supported by substantial evidence, this assignment of error is without merit.

## **Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-23) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-28) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, March 06, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE